Sinnott, Judge,
delivered the opinion of the court:
This matter comes before us on demurrer to the petition, on the ground, first, that it does not state a cause of action within the jurisdiction of the Court of Claims, and second, that all sums paid prior to December 5, 1922, are barred by the statute of limitations.
Plaintiff seeks to recover $14,995 paid for rentals of land situated within a national forest, all of which said sum, with the exception of $1,845, was paid to defendant prior to the calendar year 1923.
*603 It is alleged in paragraph 2 of the petition:
“2. Prior to May 14, 1896, the plaintiff’s predecessor in interest, Big Cottonwood Power Company, a corporation of the State of Utah, constructed in Big Cottonwood Canyon, Salt Lake County, Utah, certain works for the generation of electric power, including a power house, machinery, pen-stock, a diversion dam, reservoir, pipe lines, and transmission lines, the said works being known as the Granite Plant. The power house and machinery and part of the penstock were constructed on privately owned land. The dam, reservoir, and waterway were constructed on public land owned by the United States.”
In paragraph 4 of the petition it is alleged that in 1912 the Forest Service, contending that in so far as said works were on public lands owned by the United States, the power companies (the predecessors of the plaintiff in the present case) were trespassers on the public domain, caused proceedings to be begun in the United States District Court for Utah to enjoin the maintenance and operation of such works; that in the District Court a decree was entered for the United States June 29, 1914, but that on appeal to the Circuit Court of Appeals said decree was reversed, the Circuit Court of Appeals holding that under sections 2339-2340 Revised Statutes the power companies had acquired vested rights of way over the public lands for such reservoirs, canals, and ditches, and for dams, flumes, pipes, and tunnels of like equivalent character and uses, which were constructed and practically completed prior to May 14, 1896. The significance of date May 14, 1896, is that the act of Congress of that date (29 Stat. 120) terminated the system of vested easements over the public lands and substituted revocable permits therefor. Utah Light & Traction Co. v. United States, 230 Fed. 343.
In paragraph 5 it is alleged that on December 5, 1925, a final decree and on April 3, 1926, an amended final decree was entered in the District Court, and that in such amended final decree the plaintiff’s predecessor was adjudged to have
“a right of way for a diverting dam, reservoir, and flume, and waterway, for use in the operation and maintenance of defendant’s so-called granite plant, in, upon, over, and across *604 the land of the United States, to wit:” (Here follows a description of the land.)
In paragraph 6 it is alleged that before the entry of final decree in the district court — that is, in 1911 — the plaintiff as the owner or lessee of a 'number of hydroelectric plants, including the granite plant above-mentioned, paid, upon demand, to the United States the sum of $39,201, on account of rental for the use of the public lands, accrued to July 30, 1917, including the sum of $10,075 for the granite plant, and that
“ such sum, to wit, $10,075, was paid by the plaintiff to the United States through the Forest Service as rental for a right of way for its dams, reservoirs, flumes, and waterways in connection with its granite plant.”
It is also alleged in said paragraph 6 that thereafter, from 1918 to 1925, the plaintiff paid annually the sum of $615 as rental for said rights of way on account of the granite plant, the total amount so paid aggregating $4,920.
In paragraphs 10 and 11 it is alleged that plaintiff presented to the Secretary of Agriculture a claim (attached to the petition as Exhibit 6) for the refund and repayment of the sum of $14,995 paid as aforesaid, basing its claim for refund upon the act of March 4,1907 (c. 2907, 34 Stat. 1270), and the denial thereof by the Secretary of Agriculture.
It appears from the allegations in the petition, which of course are admitted for the purpose of the demurrer, that the granite plant was constructed prior to May 14,1896, and that plaintiff secured a final adjudication in 1925; that its predecessors had
“ a right of way for a diverting dam, reservoir, and flume, and waterway for use in the operation and maintenance ox the so-called granite plant; and that it made total payments upon demand of defendant in the sum of $14,995 from 1917 to 1925 as rental for a right of way for its dam, reservoir, flumes, and waterway, in connection with its granite plan. This state of facts admitted on demurrer would relieve plaintiff from making said payment of $14,995, which sum was in excess of amounts due the United States.
It thus appears from the allegations in the petition that out of the sum of $39,201 paid on account of rentals for the use of public lands, accrued to July 30, 1917, as set forth *605 in paragraph 6 of the petition, the sum of $10,075 was erroneously paid and thereafter $4,920 was erroneously paid to defendant. The demurrer challenges the sufficiency of the act of March 4, 1907 (34 Stat. 1270), to sustain this case in the Court of Claims, as well as the sufficiency of the petition. The pertinent provisions of said act are as-follows:
“That all money received after July first, nineteen hundred and seven, by or on account of the Forest Service for timber, or from any other source of forest-reservation revenue, shall be covered into the Treasury of the United States-as a miscellaneous receipt, and there is hereby appropriated and made available as the Secretary of Agriculture may direct, out of any funds in the Treasury not otherwise appropriated, so much as may be necessary to make refunds-to depositors of money heretofore or hereafter deposited by them to secure the purchase price on the sale of any products: or for the use of any land or resources of the national forest in excess of amounts found actually due from them to the-United States.”
It is contended by defendant that the above act
“places its administration within the jurisdiction of the-Secretary of Agriculture, both as to determining the fact issues involved and making the refunds in those cases-where he shall find as a fact that the payment has been made in excess of the amounts found by him to have been actually due to the United States for the uses specified.”
Defendant’s contentions, we think, are answered in the case of United States v. Laughlin, 249 U. S. 440, involving the act of March 26, 1908 (35 Stat. 48), section 2 of which-reads as follows:
“ That in all cases where it shall appear to the satisfaction of the Secretary of the Interior that any person has heretofore or shall hereafter make any payments to the-United States under the public land laws in excess of the amount he was lawfully required to pay under such laws, such excess shall be repaid to such person or to his legal representatives.”
It will be seen that this act is very similar to the act of March 4, 1907, supra. In the Laughlin case the Supreme Court said:
“ In our view it was the intent of Congress that the-Secretary should have exclusive jurisdiction only to deter *606 mine disputed questions of fact, and that, as in other administrative matters, his decision upon questions of law should be reviewable by the courts. In the case before us the facts were not and are not in dispute and were shown to the Secretary’s satisfaction; whether, as matter of law, they made a case of excess payment, entitling claimant to repayment under the Act of 1908, was a matter properly within the jurisdiction of the Court of Claims.”'
It is proper to observe that the act of March 4, 1907, supra, is a remedial act and should be liberally construed; out of the sum of $39,201 and the additional sum of $4,920 paid, as alleged in paragraph 6 of the petition, it appears from the allegations in the petition that the sum of $14,995 was in excess of the amount due the United States and is therefore within the purview of said act of March 4, 1907.
It remains to be seen whether all payments made prior to December 5,1922, are barred by the statute of limitations. Under the act of March 4, 1907, supra, the plaintiff had a right to apply to the Secretary of Agriculture for a refund of excess payments at any time after payment. There is no limitation fixed therein as to the time of such application. Such application and action thereon by the Secretary, we think, was a condition precedent to plaintiff’s right to sue in this court, and the statute does not begin to run until the rejection of the application.
Plaintiff’s application for a refund was denied by the Secretary of Agriculture on October 19, 1928. In the case of King v. United States, 48 C. Cls. 371, involving the act of March 26, 1908, above quoted, it was held that the Court of Claims has no jurisdiction of a claim for repayment until the claim has been presented to the Secretary of the Interior and rejected.
In Maginnis v. United States, 52 C. Cls. 271, 277, it was held, with reference to section 2 of the act of March 26, 1908 (35 Stat. 48), providing for refund of excess payments under the public land laws “ where it shall appear to the satisfaction of the Secretary of the Interior” that such payments were made, that the matter must in the first instance be determined by the Secretary, but if the application is denied through error or failure on the part of the Secretary to *607 act, the applicant may assert his right in the Court of Claims, under our general jurisdiction.
The point we wish to emphasize in the Maginnis case is that the application must first be. determined by the Secretary, and it is not until he decides the matter that the statute of limitations begins to run.
Defendant’s demurrer should be overruled. It is so ordered.
Gp.eeN, Judge; Moss, Judge; Gkaham, Judge;-and Booth, Chief Justice, concur.