**REICHHOLD CHEMICALS, INC.**

v.

**The UNITED STATES.**

No. 16–86C.

United States Claims Court.

Oct. 27, 1986.

James N. Leik, Anchorage, Alaska, for plaintiff.

Linda T. Maramba, Washington, D.C., with whom was Asst. Atty. Gen., Richard K. Willard, for defendant. Paula J. Barton, Federal Railroad Admin., of counsel.

OPINION

MARGOLIS, Judge.

Plaintiff Reichhold Chemicals, Inc. [Reichhold] seeks compensation for damage to chemicals shipped by railroad car from Seattle, Washington to Fairbanks, Alaska on the Alaska Railroad, a common carrier owned and operated by the United States. Reichhold originally filed this action in the United States District Court for the District of Alaska as a tort claim for negligence against the government. The case was transferred to the Claims Court because, although framed in negligence, the claim arose from a promise by the government contained in the bill of lading, a contract. *Reichhold Chemicals, Inc. v. Federal Railway Administration*, No. A85–155 Civil (D.Alaska Dec. 13, 1985) (order transferring case to United States Claims Court). The defendant has asserted that Reichhold's contract action is untimely because it was not filed within two years and one day of the carrier's action denying its claim as required by the bill of lading, and has moved to dismiss the action or, in the alternative, for summary judgment. Because disposition of this motion required consideration of matters outside the pleadings, the motion was treated as one for summary judgment pursuant to Rule 56. RUSCC 56. The court finds that the contractual limitation period is valid and applicable, and thus that Reichhold's action is barred as untimely. The defendant's motion for summary judgment is granted.

FACTS

On April 7, 1982, Reichhold shipped a railroad car containing the chemical Isocyanate to Fairbanks, Alaska, via Alaska Hydro Train and the Alaska Railroad. The Alaska Railroad was a common carrier owned and operated by the United States in interstate commerce until its transfer to the State of Alaska in 1985. The car was originally loaded in Geismar, Louisiana, and travelled on a bill of lading to Seattle, Washington. In Seattle, Reichhold issued a second bill of lading to cover the remainder of the trip to Fairbanks. This second

bill of lading incorporated the Uniform Straight Bill of Lading, as did the first bill of lading. On route to Fairbanks, the subject car was held in the Alaska Railroad yard at Anchorage, Alaska for a few days. While being held, the car was steam heated pursuant to the instructions of Reichhold. Reichhold's instructions required heating the car to 100°F with twenty pounds of pressure per square inch; when the car arrived at its destination the temperature of the car allegedly measured 125°F. When the chemical was delivered to the purchaser, plaintiff claims it was unsuitable for its intended use, resulting in damages of $97,676 to Reichhold.

Reichhold claims that the failure of the Alaska Railroad to follow the instructions contained in the bill of lading resulted in its damages. Reichhold filed a claim with the Alaska Railroad on August 24, 1982 which the Railroad denied by letter of February 3, 1983; this letter was received by Reichhold about February 6, 1983. Reichhold originally filed suit in the United States District Court for the District of Alaska on April 4, 1985, claiming that the government's conduct constituted negligence. The government asserted that the action was based on the bill of lading, a contract, and therefore jurisdiction was proper only in the United States Claims Court under 28 U.S.C. § 1346(a)(2) (1982) because the amount in issue was over $10,000. The district court agreed, and the action was transferred to this court pursuant to 28 U.S.C. § 1631 (1982).

The government asserts that the action is barred as untimely by the terms of the bill of lading itself, which requires that, as a condition precedent to recovery, "suits shall be instituted ... only within two years and one day from the day when notice in writing is given by the carrier ... that the carrier has disallowed the claim." Uniform Straight Bill of Lading § 2.(b); *see* 49 C.F.R. 31.2 Appendix D (1938 ed.); 49 C.F.R. § 1035.2 Appendix D (1985). Reichhold claims that this action is governed by the Tucker Act six-year statute of limitations in 28 U.S.C. § 2501 (1982), or if governed by the limitation period of the bill of lading, that the government is estopped to rely on it in the circumstances of this case.

## DISCUSSION

### I. *Applicable Limitation Period*

The liability of common carriers under bills of lading is governed by the Interstate Commerce Act, 49 U.S.C. § 11707 (1982). Section 11707(e) makes it unlawful for a carrier to set a limitation period of less than nine months for filing a claim and two years for filing suit after notice of denial of a claim is received. This section provides a congressional determination of a "reasonable" time for filing suit. The validity of this limitation period has long been recognized. *See, e.g., Leigh Ellis & Co. v. Davis,* 260 U.S. 682, 688–89, 43 S.Ct. 243, 244, 67 L.Ed. 460 (1923) (affirming the applicability of a contract term requiring filing suit within two years and one day).

■ Reichhold argues that this provision of the Interstate Commerce Act does not apply to the Alaska Railroad, a federal instrumentality. Reichhold cites *Sea-Land Service, Inc. v. Interstate Commerce Commission,* 738 F.2d 1311, 1312–13 (D.C. Cir.1984) for the proposition that the Alaska Railroad is exempt from regulation under the Interstate Commerce Act. Reichhold also cites Executive Order 11,107 (1963) (superseded 1983 by Exec. Order 12,434), *reprinted in* 43 U.S.C. § 975f note (1982), as support that only certain ratemaking provisions of the Act were made applicable to the Alaska Railroad. Assuming, without deciding, that Reichhold's assertions are correct, this result does not mean that the longer Tucker Act statute of limitations would necessarily apply. If section 11707(e) did not apply to the Alaska Railroad, it could set any "reasonable" limitation period it chose in its bills of lading, even one *shorter* than two years. In addition, the bill of lading at issue in this case was provided by Reichhold itself.

Reichhold also argues by analogy to cases interpreting 49 U.S.C. § 16(3) (now 49 U.S.C. § 11706 (1982)) and 28 U.S.C.

§ 2501, which hold that the two-year statute of limitations in § 16(3) does not apply to claims against the government. In cases such as *Union Pacific Railroad Co. v. United States*, 114 Ct.Cl. 714, 715, 86 F.Supp. 907, 908 (1949), *cert. denied*, 339 U.S. 930, 70 S.Ct. 664, 94 L.Ed. 1350 (1950), and *Southern Pacific Co. v. United States*, 62 Ct.Cl. 391, 399 (1926), the applicability of the shorter statute of limitations in § 16(3) was rejected, allowing carriers to sue the United States for shipping charges within the six-year statute of limitations. Notable in these cases, however, is the fact that without this holding the United States would have had the ability to deduct charges from future payments or to sue carriers well after the limitation period had run against the carriers. Thus, the government could avoid liability to carriers with impunity by merely waiting for the statutory period to elapse before deducting the disputed charges. *See Southern Pacific Co.*, 62 Ct.Cl. at 401. Congress explicitly remedied any anomaly on October 17, 1978 by enacting Public Law 95–473 which repealed § 16(3) and added 49 U.S.C. § 11706. Section 11706 sets a three-year statute of limitations for actions on shipping charges; this limitation period specifically applies to the United States. 49 U.S.C. § 11706(f) (1982). Actions on bills of lading are not governed by § 11706. But in any event, the result in the cases cited by Reichhold would no longer hold; § 11706 now ensures equality between the parties.

■ The bill of lading for the transportation of the car from Seattle to Fairbanks, which constituted the contract between Reichhold and the United States, specified that it was subject to the Uniform Straight Bill of Lading. Section 2.(b) of the Uniform Straight Bill of Lading contains explicit language that suits must be instituted within two years and one day of receipt of notice that the carrier has disallowed a claim. In the absence of a controlling statute, contractual limitations on bringing suit which are shorter than the general statute of limitations must be reasonable. *See* Annotation, *Validity of Contractual Time Period, Shorter Than Statute of Limitations, for Bringing Action*, 6 A.L.R.3d 1197, 1202–06 (1966). A "reasonable" time is one which allows sufficient time for a potential plaintiff to investigate and file its case. That Congress in 49 U.S.C. § 11707(e) specified a two-year period for filing suit after notice that a claim has been denied provides convincing evidence that this period is reasonable.

■ The government may adopt a contractual limitation period shorter than the statute of limitations generally applicable to it. *United States v. Gulf Puerto Rico Lines, Inc.*, 492 F.2d 1249, 1251–52 (1st Cir.1974); *United States v. Chicago, R.I. & P.R. Co.*, 200 F.2d 263, 264–65 (5th Cir. 1952); *United States v. Framen Steel Supply Co.*, 435 F.Supp. 681, 683 (S.D.N.Y. 1977). If the government is bound, there is no inconsistency in applying the contractual limitation period to the other party. In a suit based on a bill of lading, the court in *Strickland Transportation Co. v. United States*, 223 F.2d 466, 467 (5th Cir.1955) stated that "[t]he suit is on the contract contained in the Bill of Lading and there can be no recovery contrary to its terms."

■ The limitation period contained in the bill of lading is binding both on private shippers and the government. *See Leigh Ellis & Co.*, 260 U.S. at 688–89, 43 S.Ct. at 244; *United States v. Seaboard Air Line Railway Co.*, 22 F.2d 113, 116 (4th Cir. 1927). To be successful, a party seeking a waiver of a contractual limitation period must show that the period is so short as to give the other party an undue advantage. The burden is on the party seeking a waiver of a limitation period to show that a waiver should be granted. *See Maney Aircraft Parts, Inc. v. United States*, 202 Ct.Cl. 54, 60–61, 479 F.2d 1350, 1353 (1973). Reichhold has stated that the government will suffer no prejudice by a waiver of the limitation period. Mere lack of prejudice to the government, however, does not entitle the plaintiff to a waiver. *See id.* at 61, 479 F.2d at 1353. Reichhold provides no valid reason for its failure to file suit within the two years and one day specified in the

contract. In these circumstances, there is no appropriate basis to find a waiver.

## II. *Estoppel*

Reichhold also asserts that even if the contractual limitation applies in this case, the defendant should be estopped to rely on it. Reichhold bases this assertion on the fact that the Alaska Railroad treated the claim as a tort claim, giving a clear indication that federal statutes were being invoked. Further, it asserts, the government took the position before the district court that the case was a contract case under this court's Tucker Act jurisdiction. Reichhold contends that the government's "inconsistent positions" led it to believe that the limitations periods in federal statutes would be applied, and in this situation the government is estopped to rely on the contractual limitation period contained in the bill of lading. The court finds that the elements necessary to find estoppel are not present.

■ Necessary for finding estoppel are four elements showing: 1) the party to be estopped must know the facts; 2) it must intend that its conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; 3) the latter must be ignorant of the true facts; and 4) it must rely on the former's conduct to its injury. *Emeco Industries, Inc. v. United States*, 202 Ct.Cl. 1006, 1015, 485 F.2d 652, 657 (1973); *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir.1970); *Pacific Gas & Electric Co. v. United States*, 3 Cl.Ct. 329, 340 (1983), *aff'd* 738 F.2d 452 (Fed.Cir.1984).

■ At the time this action was filed in the district court on April 4, 1985, the sole indication Reichhold had as to the Alaska Railroad's treatment of this claim was the administrative denial of the claim, which Reichhold admits it received about February 6, 1983. Only actions by the government before the suit was filed could logically have been relied on by Reichhold. Reichhold asserts that the denial clearly indicated that the defendant was treating the claim as a federal tort claim. Even assuming that the government knew this was not properly a tort claim, and intended that Reichhold act on its characterization of the claim, such facts do not constitute the "inconsistent positions" that Reichhold now asserts require a finding that the government is estopped to rely on the contractual limitation period. When the claim was denied on February 6, 1983, there were no "inconsistent positions," and Reichhold thus could not have relied on the "inconsistent positions" to its detriment. Nothing done by the government after the filing of the action in the district court could have affected Reichhold's conduct of the suit in this court. When suit was filed in the district court, it was untimely as a suit on the bill of lading containing the requirement to sue within two years and one day of receiving notice that the claim had been denied by the carrier. After transfer to this court, the district court filing date was applicable here, thus barring plaintiff's action.

## CONCLUSION

The limitation period for bringing suit contained in the bill of lading, two years and one day after receipt of notice that the carrier has denied the claim, governs this contract and is binding on both parties. Reichhold's action, which was filed two years and two months after notification that the carrier had rejected its claim, is barred as untimely. The elements necessary to find that the United States is estopped to rely on the contractual limitation period contained in the bill of lading are not present in this case. Defendant's motion for summary judgment is granted. The clerk will dismiss the complaint. Each party is to bear its own costs.