**POWERINE OIL COMPANY, USA Petrochem Corporation, Tosco Corporation, La Jet, Inc., C. Itoh & Company (America), Inc., Fletcher Oil & Refining Company, Inc., Newhall Refining Company, Inc. and Oasis Petroleum Corporation, Appellants,**

v.

**The UNITED STATES, Appellee.**

**PACIFIC REFINING COMPANY, Appellant,**

v.

**The UNITED STATES, Appellee.**

**Nos. 87–1385, 87–1386.**

United States Court of Appeals, Federal Circuit.

Feb. 5, 1988.

Richard A. Del Guercio, Demetriou, Del Guercio & Lovejoy, Los Angeles, Cal., argued, for appellant Powerine. With him on the brief, was Stephen A. Del Guercio.

Warren E. Connelly, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., argued, for appellant Pacific. With him on the brief, were Daniel Joseph, P.C. and C. Fairley Spillman.

Paula J. Barton, Dept. of Justice, Washington, D.C., argued, for appellee. With her on the brief, were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett. Also on the brief, were Mary H. Egger, Robert T. Maguire and Avrum Fingeret, U.S. Dept. of Energy, Washington, D.C., of counsel.

Before BISSELL and MAYER, Circuit Judges, and COWEN, Senior Circuit Judge.

BISSELL, Circuit Judge.

These appeals arise from a decision of the Department of Energy Board of Contract Appeals (Board) respecting a contract dispute between Powerine Oil Company, USA Petrochem Corporation, Tosco Corporation, La Jet, Inc., C. Itoh & Company (America), Inc., Fletcher Oil & Refining Company, Inc., Newhall Refining Company, Inc. and Oasis Petroleum Corporation (collectively, the contractors) and the United States Department of Energy (DOE). The Board denied as untimely the contractors' claims for reimbursement of alleged overcharges arising from their purchases of crude oil from DOE. *Powerine Oil Company*, EBCA Nos. 278, 280–83, 290, 296, 300–05, 307, 321, 87–1 BCA ¶ 19,631. We remand the case for proceedings consistent with this opinion.

## BACKGROUND

The Board's decision contains a statement of the facts relevant to this case. *Id.* Accordingly, only a summary of the facts is presented here.

DOE advertised and entered into one or more contracts for the sale of crude oil to each of the contractors. Each contract contained a Payments clause that provided that the amount of each payment by the contractor would be determined by DOE and that, in case of disagreement as to the amount of any payment, the payment would be deemed a dispute and the contractor would pay the amount, subject to appeal. These contracts, moreover, contained no time limit for filing claims. All of the contractors paid the weekly bills presented to them. None gave notice of a disagreement or requested a dispute determination during the contract periods, and none filed a claim with the contracting officer during the term of contract performance.

The contracts required the contractors to pay the highest price posted by "purchasers" of crude oil from designated oil fields. Oil companies "posted" prices monthly by way of published price bulletins. Although the majority of the contracts contained no definition of the word "purchaser," five of the contracts defined "purchaser" as "any-

one present or future who posts or publishes prices, and in fact purchases crude oil in the ... enumerated fields pursuant to such postings."

A 1978 contract relevant to this case but not at issue here required the price of crude to be determined by the highest posted price of a "principal purchaser" who "regularly posted" in the named fields. Powerine Oil Company protested the use of the posted prices under this contract of one of the oil companies—ARCO—on the basis that ARCO was not a "regular poster" or a "principal purchaser." On appeal of Powerine's claim to the Board, the Board determined that ARCO was not a "principal purchaser" because it bought most of its oil from related companies rather than from third parties. *Powerine Oil Co.*, EBCA No. 117–3–80, 81–2 BCA ¶ 15,430, *reconsideration denied*, 82–1 BCA ¶ 15,632 [hereinafter *Powerine I*]. As a result of this decision, DOE deleted the words "regularly" and "principal" from its subsequent contracts, leaving only the requirement that the highest posted price be that of a "purchaser."

Over a 21–month period commencing August 1982 and ending May 1984, the contractors filed separate, independent claims for recovery alleging that DOE had overcharged them under the subject contracts by using ARCO's posted price. They filed these claims 21 to 51 months after final payment under the contracts, and 10 to 32 months after the Board issued *Powerine I*.

The contracting officer denied each claim, and the contractors timely appealed to the Board. The Board consolidated the fifteen appeals in one hearing, and denied each claim on the ground that they were untimely filed. The contractors now bring these appeals before us pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 607(g)(1)(1982).

## ISSUE

Whether the Board erred in holding that the contractors unreasonably delayed in filing their claims.

## OPINION

Under our standard of review, the Board's legal conclusions are not final, and thus are freely reviewable. The Board's findings of fact, however, are final and cannot be overturned unless they are fraudulent, arbitrary, capricious, so grossly erroneous as to necessarily imply bad faith, or are not supported by substantial evidence. 41 U.S.C. § 609(b) (1982).

■ In this case, the Board found that the contractors had sufficient notice during the performance of the subject contracts to bring their claims at that time. Specifically, the Board determined that the contractors were under inquiry notice to investigate whether ARCO qualified under the contractual terms as a "purchaser." We conclude that these findings are not supported by substantial evidence.

There is nothing in the record to show that the contractors actually knew during contract performance that ARCO primarily bought oil from related corporations rather than from third parties. Further, record evidence reveals that ARCO would not have disclosed this information even if the contractors had asked for it, because ARCO considered it proprietary. The Board's analysis turned on the finding that it was common knowledge oil companies made both intra-company transfers and third party purchases. However, this does not establish that the contractors should have known ARCO primarily bought oil during the relevant period by means of intra-company transfers. Considering the record as a whole, we conclude that the contractors neither knew nor should have known during contract performance that ARCO may not have qualified as a "purchaser."

The record reveals that the contractors first became aware of a possible defect in ARCO's status as a purchaser once the Board issued *Powerine I*, on October 20, 1981. Therefore, we deem that the contractors first discovered they might have an overcharging claim as of that date.

■ In cases such as this in which the subject contracts do not require the asser-

tion of claims before final payment, claims must be brought within a reasonable time. *American Western Corp. v. United States,* 730 F.2d 1486, 1488–89 (Fed.Cir. 1984). In determining whether the contractors unreasonably delayed, we follow *American Western, id.* at 1486, by relying on the factors enunciated in *Roberts v. United States, Great Am. Ins. Co.,* 357 F.2d 938 (Ct.Cl.1966). There the Court of Claims examined whether delay was unreasonable by considering (1) if the facts supporting the claim were still readily available, and (2) if prejudice had occurred due to the delay. *Id.* at 946. Here the Board failed to make the necessary findings of fact underlying these issues, and failed to do the legal analysis based on the *Roberts* factors. Therefore, we remand for the Board to do so.

## CONCLUSION

For the reasons discussed, we remand for proceedings consistent with this opinion.

REMANDED.