**544**

Robert C. LUDKA, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–518C.

United States Claims Court.

Dec. 5, 1991.

Robert C. Ludka, pro se.

Julie A. Shubin, Washington, D.C., with whom were Terrence S. Hartman, Asst. Director, David M. Cohen, Director, Commercial Litigation Branch, and Stuart M. Gerson, Asst. Atty. Gen., Civ. Div., for defendant.

## OPINION

SMITH, Chief Judge.

This case comes before the court on plaintiff's claim for money damages allegedly incurred in purchasing a misdescribed surplus vehicle from the General Services Administration (GSA). After reviewing the parties' cross-motions for summary judgment and after hearing oral argument, the court grants defendant's motion. Although the court sympathizes with the plight of this particular plaintiff, the law compels this result. The court would also note that this plaintiff did a particularly good job of representing himself. This court has been described as the citizens' court because of its unique responsibility of hearing almost every conceivable type of money claim by the citizen against the sovereign. This case, and the court's procedures, in this day of complex and highly technical litigation, serve as a good example of the court's duty as the citizens' court and that duty's fulfillment.

### FACTS

Plaintiff's claim is based on his purchase of a 1984 Dodge Diplomat automobile from the GSA. Plaintiff purchased the vehicle in September 1988 pursuant to an Invitation for Bids (IFB) issued by GSA for surplus vehicles. The IFB misdescribed the vehicle purchased by plaintiff as a 1985 model.

The IFB contained the standard "Description Warranty," which provided, in pertinent part:

The Government warrants to the original purchaser that the property listed on the Invitation for Bids will conform to its description. If a misdescription is determined before removal of the property, the Government will keep the property and refund any money paid. If a misde-

scription is determined after removal, the Government will refund any money paid if the purchaser takes the property at his or her expense to a location specified by the contracting officer. *NO REFUND WILL BE MADE UNLESS THE PURCHASER SUBMITS A WRITTEN NOTICE TO THE CONTRACTING OFFICER WITHIN 15 CALENDAR DAYS OF THE DATE OF REMOVAL THAT THE PROPERTY IS MISDESCRIBED AND MAINTAINS THE PROPERTY IN THE SAME CONDITION AS WHEN REMOVED ...*

(emphasis and capitalization in the original). The warranty made clear that it stood "in place of all other guarantees and warranties, express or implied."

Plaintiff submitted a bid of $1,111.00 for the vehicle. Plaintiff's bid was the highest made on the vehicle and thus he was awarded the sales contract on October 17, 1988. Plaintiff removed the vehicle from GSA's possession on November 11, 1988. Plaintiff apparently became aware of the misdescription shortly after December 20, 1988, when the Pennsylvania Bureau of Motor Vehicles returned plaintiff's application for transfer of title because, among other things, the model year was incorrectly recorded on his application. On October 2, 1989, almost eleven months after he removed the vehicle and ten months after he first learned of the vehicle's correct model year, plaintiff orally notified GSA of the misdescription. On October 27, 1989, the Contracting Officer (CO) advised plaintiff that he had failed to comply with the terms of the misdescription warranty. On November 6, 1989, plaintiff filed a claim with the CO, basing it on the fact that GSA had failed to comply with its warranty that "the property listed on the Invitation for Bids will conform to its description." On November 14, 1989, the CO issued a final decision denying plaintiff's misdescription claim because he had failed to submit it within fifteen days of removing the vehicle, as the warranty required.

## DISCUSSION

It is undisputed that plaintiff did not receive the vehicle he bid on and ultimately purchased. The IFB clearly represented that the Dodge Diplomat offered for sale was a 1985 model, when in fact it was a 1984 model. The court's decision thus rests on a determination whether the aforementioned "Description Warranty" affords plaintiff any relief.

 In his motion for summary judgment, plaintiff argues that the warranty's first sentence stands as GSA's guarantee to him that the vehicle he bid on was the vehicle GSA advertised: a 1985 Dodge Diplomat. Plaintiff is correct in this assertion. However, it is a basic principle of contract law that a contract must be read as a whole and interpreted so as to harmonize and give meaning to all its provisions. *Tibshraeny Bros. Constr., Inc. v. United States*, 6 Cl.Ct. 463 (1984). No matter how clear the meaning a given clause may have when read in isolation, courts are bound to give effect to all parts of an agreement so that no clause is rendered meaningless, inexplicable, or superfluous. *Seaboard Lumber Co. v. United States*, 19 Cl.Ct. 310, 314 (1990). Accordingly, this court cannot simply give effect to the warranty's first sentence while ignoring the rest of its provisions.

It is undeniable that the "Description Warranty" guaranteed plaintiff that he would receive the vehicle GSA promised him. If GSA failed to honor this promise, the warranty provided that the GSA would refund plaintiff's money. This guarantee, however, was conditioned, or limited by, a later sentence in the warranty which provided that "No refund will be made unless the purchaser submits a written notice to the contracting officer within 15 calendar days of the date of removal that the property is misdescribed...." Although somewhat inelegantly written, this conditional sentence clearly put the burden of discovery of a misdescription on plaintiff. By the warranty's very terms, which plaintiff agreed to by signing the sales contract, plaintiff could not recover from GSA unless he met the warranty's discovery and notice provisions.

Such an arrangement between auctioneers and bid purchasers is common and, in most respects, fair.[1] In exchange for a bid price the purchaser deems fair, the purchaser receives a guarantee that the property he or she bid on is what the auctioneer claims it is. In exchange for its guarantee, the auctioneer attracts more bidders and generates bidder confidence in the items auctioned off. Similarly, the terms of the guarantee itself reflect a practical balance. The auctioneer places the burdens of discovery and notice on the purchaser in order to make the guarantee possible for more purchasers. If the auctioneer had to invest extensive resources into carefully inspecting every item auctioned off, the auctioneer would be less able to afford to offer guarantees on all its merchandise or to all its purchasers. Although the placement of these burdens on the purchaser lessens the relative value of the guarantee, bidders presumably have the opportunity to reflect that fact by making lower bids.

■ Thus, although the GSA did not provide the vehicle it guaranteed plaintiff, the GSA cannot be held liable. This conclusion is buttressed by relevant case law. In *Donald R. Baker*, GSBCA No. 9831, 90–2 BCA ¶ 22,873, *aff'd, Baker v. United States*, 925 F.2d 1478 (Fed.Cir.1991), a recent case dealing with a fifteen day notice warranty identical to the one at issue here, the General Services Board of Contract Appeals (GSBCA) held that unless a contractor can show either (1) that it could not have discovered the misdescription within fifteen days or (2) that the government waived the fifteen day time period, the contractor is bound by the terms of the warranty. In this case, plaintiff made neither allegation nor offered evidence supporting any such allegations. *See also Appeal of Charles E. Warren*, GSBCA No. 10376, 91–3 BCA ¶ 24,139 (ruling that recovery is precluded where the contractor fails to abide by the notice provisions of a misdescription warranty). While this may seem a harsh result, it is nonetheless mandated by basic contract principles and, to a large degree, by common sense.

Based on the foregoing, the court must deny plaintiff's motion for summary judgment and grant defendant's cross-motion for summary judgment. The clerk is hereby directed to dismiss the complaint. The parties shall bear their own costs.

IT IS SO ORDERED.

---

1. The fairness of such a contractual agreement, of course, depends on both parties to the agreement having full knowledge of the warranty's terms or, as plaintiff surely did here, an opportunity to gain such knowledge.