**STONE FOREST INDUSTRIES, INC., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

Nos. 265–89C, 430–89C, 296–89C and 90–3833C.

United States Claims Court.

June 17, 1992.

Wesley R. Higbie, San Francisco, Cal., for plaintiffs.

Bryant G. Snee, Commercial Litigation Branch, with whom were Sharon Y. Eubanks, Asst. Director, David M. Cohen, Director, and Stuart M. Gerson, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., for defendant. Jeff Handy, Dept. of Agriculture, Washington, D.C., of counsel.

## OPINION

LOREN A. SMITH, Chief Judge.

This dispute comes before the court on defendant's motion to dismiss or, in the alternative, for summary judgment. Plaintiffs, relying on 41 U.S.C. § 601, *et seq.* and 28 U.S.C. § 1491, are seeking refunds from the Forest Service of the United States Department of Agriculture (Forest Service) for portions of the purchase price paid for various timber sales. At issue is whether plaintiffs' failure to comply with the contractual time limitation provisions for the submission of claims bars those claims. For the following reasons, the court must grant defendant's motion.[1]

---

1. The court notes that defendant is not arguing that all of plaintiffs' claims would be time-barred. *See* n. 4 *infra* for an explanation of which claims are allegedly time-barred. Defen-

## FACTS

Plaintiffs [2] and the Forest Service entered into numerous contracts for the sale of timber from several national forests located in northern California. The Forest Service charged plaintiffs for timber harvested under the contracts at prices based in part on the use of a regional pricing index in accordance with contract provisions. Plaintiffs argue that the index became inadequate and that, under the contracts, plaintiffs are entitled to pay for the timber at flat rates. *See Arcata Forest Products Co. v. United States,* 18 Cl.Ct. 93 (1989), *aff'd,* 915 F.2d 1584 (Fed.Cir.1990). Plaintiffs fully paid the price charged by the Forest Service, and seek refunds of the difference between the index adjusted rates and the flat rates in the contract.

The twenty-six contracts at issue here all contained Special Provision C9.21, which provides:

> Purchaser claims under this contract shall be submitted in writing to the Forest Supervisor of the National Forest on which the sale is located. He/she is designated the Contracting Officer for the purpose of receiving such claims. Date of receipt by Forest Supervisor shall be considered as the beginning date for determining any interest due on claims.
>
> Purchaser shall file such claim within the following time limits. Failure by Purchaser to submit a claim within these time limits shall relinquish the United States from any and all obligations whatsoever arising under said contract or portions thereof when: [3]
>
> .    .    .    .    .
>
> (c) All other—Purchaser must file any claims not later than 60 days after receipt of Forest Service written notice that sale is closed.

In short, plaintiffs were required under all contracts to submit their claims to the contracting officer within 60 days of receiving written notification that the sale was closed. Defendant asserts that, in most instances, plaintiffs failed to satisfy this provision of the contract. Twenty of the claims were submitted from between 354 days to 2226 days after the 60–day period had expired.[4] (Defendant does not argue

dant does not allege that the following claims are time-barred:

| Sale | Contract # | Date of Claim |
|------|-----------|---------------|
| **STONE FOREST** | | |
| Buck | 050271 | 02/25/88 |
| Dyer II | 015584 | 02/25/88 |
| Short | 016129 | 02/25/88 |
| Point | 015865 | 05/02/89 |
| | | |
| **LOUISIANA–PACIFIC** | | |
| Island | 008146 | 06/19/90 |
| Skull | 050305 | 06/19/90 |

**2.** This case represents the consolidation of a number of similar complaints. The three plaintiffs in this case are Stone Forest Industries, Inc., Taylor Westbrook, and Louisiana–Pacific Corporation. Stone Forest is seeking refunds under five timber sale contracts; Taylor Westbrook is seeking refunds under two contracts; Louisiana–Pacific is seeking refunds under nineteen contracts.

The court also notes the related cases of Harwood Investment Company and Willits Financial Company, No. 91–920C (five contracts); Sierra Pacific Industries, No. 91–1331C (thirty-three contracts); and Rough & Ready Lumber Company and Rough & Ready Timber Company, No. 91–1186C (four contracts). Because these cases involve primarily the same legal arguments as those here, this opinion shall serve as the opinion in the above three cases (*Harwood, Sierra Pacific,* and *Rough & Ready* ). However, the court notes that those cases also deal with certain fact-specific issues that must be addressed separately. With respect to those issues, the court has issued separate opinions today.

**3.** Subsections (a) and (b) have been omitted for ease of reference. Those sections are concerned with the construction of specified roads, and are not relevant here.

**4.** The government contends that the following claims are time-barred:

| Sale | Contract # | Date of Closure | Date of Claim | # of Days Late |
|------|-----------|-----------------|---------------|----------------|
| **STONE FOREST** | | | | |
| Spike | 017036 | 08/20/86 | 02/25/88 | 494 |
| | | | | |
| **TAYLOR WESTBROOK** | | | | |
| Mingo Salvage | 051063 | 12/19/83 | 05/18/88 | 1552 |
| Van Horn | 051055 | 03/31/87 | 05/18/88 | 354 |

that the remaining six claims are time-barred.) Defendant contends that, because those twenty claims did not comply with the time limitation, they should be dismissed.[5]

In response, plaintiffs contend that the defendant's motion should be denied because defendant was on notice that the claims would be filed, and because defendant has not alleged prejudice from plaintiffs' delay in submitting the claims.

## DISCUSSION

### I. Contract Disputes Act

#### A. Contract provisions specifying time limitations

■ Defendant argues, relying on *Do-Well Machine Shop, Inc. v. United States*, 870 F.2d 637, 641 (Fed.Cir.1989), that contract provisions that limit the time for submitting claims to contracting officers are fully enforceable and do not violate the Contract Disputes Act, 41 U.S.C. § 601 *et seq.* (CDA). In *Do-Well*, the parties had agreed on a one-year limitation period to bring claims relating to terminations for convenience. Plaintiff submitted its claim approximately one and one-half years after

the contract had been terminated. The court held that plaintiff's claim was time-barred. The court stated that the government possessed the same power to contract as that of a private party, and that, if the parties agreed to limit the time to submit claims, the parties were bound by the provision. The fact that the government was the enforcing party should not be a factor in the court's analysis. 870 F.2d at 641.

The court in *Do-Well* also addressed plaintiff's argument that the termination clause was inconsistent with the CDA, because it imposed a time limit while the CDA did not, and that therefore the time limit should not be enforced. The Federal Circuit in *Do-Well* stated:

> In the absence of such language concerning the presentation of settlement claims, we are unconvinced that it was [Congress'] intent to preclude parties from agreeing to a limitations period. The congressional silence on the disputed point is more likely construed as a desire that the limitations period be governed by the parties' intentions, not that it have an indefinite duration unalterable by the parties.

| Sale | Contract # | Date of Closure | Date of Claim | # of Days Late |
|------|-----------|-----------------|---------------|----------------|
| LOUISIANA–PACIFIC | | | | |
| Thatcher | 004796 | 03/16/84 | 06/19/90 | 2226 |
| Butte Creek | 008138 | 03/14/88 | 06/19/90 | 767 |
| Hokey | 011314 | 05/27/87 | 06/19/90 | 1059 |
| Ridge | 011355 | 09/26/88 | 06/19/90 | 571 |
| Slate | 050339 | 10/20/87 | 06/19/90 | 913 |
| Ruth | 051097 | 06/12/87 | 06/19/90 | 1043 |
| Browns | 051105 | 10/19/87 | 06/19/90 | 914 |
| Bear | 051345 | 05/14/86 | 06/19/90 | 1437 |
| Ives | 050457 | 07/21/87 | 06/19/90 | 1004 |
| Cattle | 050796 | 10/21/86 | 06/19/90 | 1277 |
| Hunter | 051956 | 05/15/86 | 06/19/90 | 1436 |
| Hunter Resale | 051331 | 02/23/87 | 06/19/90 | 1152 |
| Bar | 053553 | 12/04/87 | 06/19/90 | 868 |
| Graham | 052780 | 03/23/87 | 06/19/90 | 1124 |
| Elder | 050895 | 06/10/87 | 06/19/90 | 1045 |
| Wallow | 050929 | 05/27/87 | 06/19/90 | 1059 |
| Cold Fork | 051933 | 07/28/87 | 06/19/90 | 997 |

Defendant's Brief at 6–7.

Plaintiffs, in their Statement of Genuine Issues, only take exception with defendant's characterization of three of the above twenty contracts. Those three sales (Mingo, Van Horn, and Spike) are discussed in Section III of this opinion. With respect to the remaining seventeen contracts, since plaintiffs did not dispute defendant's contentions, those contentions are taken as true for purposes of this motion. *See* RUSCC 8(d).

5. In addition, defendant contends that one claim, the Spike timber sale, is barred by an express release signed by Stone Forest concerning that sale. This contract is discussed under section III of this opinion.

*Id.* Defendant here argues that the time limitation period in this case is analogous. The parties freely agreed to limit the time for submission of claims. Because plaintiffs failed to submit their claims as required under the contract, contends defendant, the claims must be dismissed. For the reasons set forth more fully below, the court must agree that the time limitations provision is fully enforceable. Where plaintiffs failed to submit their claims within the 60–day period required under the contract, those claims are time-barred.[6] The rule of law stated in *Do–Well* is binding on this court.

Plaintiffs argue that *Do–Well* is not applicable here, because that case did not deal with the issues of ·"clarity of expression, lack of mutuality, prior notice of claims, or prejudice." Plaintiffs' Response at 15. These issues, as well as other arguments made by plaintiffs, thus must be addressed.

### 1. *Ambiguity of contract language*

The consequences of failing to comply with the time limitation provision are explicit in the contract language:

> Failure by Purchaser to submit a claim within these time limits shall relinquish the United States from any and all obligations whatsoever arising under said contract....

Provision C9.21. Plaintiffs assert that this language is ambiguous, and therefore cannot be enforced. However, in response to the court's questions at oral argument, plaintiffs' counsel was unable to provide any reasonable interpretation of the language other than that proposed by defendant's counsel—if purchasers fail to submit their claims within the prescribed period, the government is released from all obligations to the purchasers. The court finds this interpretation persuasive. *See Ludka v. United States*, 24 Cl.Ct. 544 (1991). As defendant points out in its Reply Brief, the language of a contract must be interpreted by giving it its ordinary meaning as understood by a person of reasonable intelli-

gence. Defendant's Reply at 5, citing *Hol–Gar Manufacturing Corp. v. United States*, 351 F.2d 972, 979, 169 Ct.Cl. 384 (1965).

It is clear to the court that a person of reasonable intelligence, when faced with the contractual language at issue here, would conclude that a failure to file a claim within the 60–day period would preclude the recovery of any refunds under that claim. While the language may have been more artfully crafted, the provision is not ambiguous and therefore may properly be enforced to effect the forfeiture of an untimely claim.

### 2. *Mutuality between the parties*

Plaintiffs, relying on *Reichhold Chemicals, Inc. v. United States*, 11 Cl.Ct. 150 (1986), argue that the contract here does not contain a mutually binding time limitation for the submission of claims by the government and that, therefore, the government may not require compliance with a contractual limitation period that is shorter than the period applicable to the government. Plaintiffs argue that, although the court in *Reichhold* stated that "[t]he government may adopt a contractual limitation period shorter than the statute of limitations generally applicable to it," 11 Cl.Ct. at 153 (citations omitted), the court then went on to state, "[i]f the government is bound, there is no inconsistency in applying the contractual limitation period to the other party." *Id.* Plaintiffs construe this language as providing that, in order for the provision to be binding on the contractor, the government must also be bound by the shorter period. Plaintiffs argue that, because the government is not bound by a limitations period similar to the one binding plaintiffs, the shorter time limitation can not be applied to them.

Defendant contends that the recent Federal Circuit decision in *Do–Well* is controlling on this issue. As discussed above, *Do–Well* stands for the proposition that parties to a contract, including the govern-

---

**6.** Defendant also asserts the doctrine of laches as a basis for its motion. Defendant's Brief at 12 n. 8. However, because the court concludes that plaintiffs' claims are time-barred, it is not necessary to address this argument.

ment, are free to agree to a time limit for the submission of claims which is shorter than the time limitation provided by the Contracts Disputes Act. 870 F.2d at 641. The court in *Do–Well,* however, did not address the question posed here, which is whether a time limitation can bind the contractor even when the government is not similarly bound. *Do–Well* involved an agreement limiting the contractor's right to file termination-for-convenience claims. The court in *Do–Well* did not discuss the issue of mutuality between the parties concerning the time limitation because the termination-for-convenience remedy would be available only to the contractor. The government would never file a termination-for-convenience claim, and, therefore, need not have any limitation on the time within which claims were to be filed. *Do–Well,* therefore, does not provide an answer.

Plaintiffs, however, misconstrue *Reichhold,* and their argument that the limitation period is not binding because it lacks mutuality is unpersuasive. *Reichhold* merely provides that if the government consents to be bound by a contractual limitation, then the other contracting party should be similarly bound. The reverse is not necessarily true. In *Reichhold,* the contractual language provided that "suits shall be instituted" within a period of time shorter than that under the Tucker Act. The court found that this language was binding on both the government and the private party. In contrast, the provision at issue in this case merely addresses "purchaser claims," not "claims in general," or claims by the government.

Plaintiffs here were free to waive their right to the statute of limitations provided in the Contracts Disputes Act. They effectively did so in agreeing to Provision C9.21. The fact that the limitation is not similarly binding on the government does not defeat the provision.

### 3. *Prior notice of claims*

■ Plaintiffs contend that the facts of this case are analogous to those in *Arcata Forest Products Co. v. United States,* 18 Cl.Ct. 93 (1989), *aff'd,* 915 F.2d 1584 (Fed. Cir.1990). Plaintiffs argue that, because the Forest Service was a party in *Arcata,* and the basis of liability in that case was analogous to that asserted here, the Forest Service was on notice when the claims in that case were filed that other claims would be filed. Plaintiffs, relying on *Big Chief Drilling Co. v. United States,* 15 Cl.Ct. 295, 303–04 (1988), argue that where, as here, the government had actual or constructive notice of the plaintiffs' claims, time limits on submission of claims are not to be technically construed as long as there is no prejudice to the government. Plaintiffs contend that, because the facts of this case are similar to those in *Arcata,* and because the Forest Service had received similar claims from other timber companies in the region from as early as 1983, the Forest Service was on notice that the claims would be filed. Therefore, plaintiffs contend, their claims should not be dismissed on the technical ground of noncompliance with the time limitation provision, because the government has not alleged prejudice.

In response, the government points out that, according to plaintiffs' theory, when the first plaintiff in *Arcata* filed its first claim, that action placed the government under an obligation to investigate and prepare to defend every timber contract that contained the challenged index. This would be an unreasonable result. In addition, the defendant points out that the notice requirement in the CDA is only fulfilled when the contractor notifies the government, in the manner required under that act, that it believes the government owes it money. Plaintiffs' theory would make the notice requirements of the CDA irrelevant. The court finds that the filing of the analogous *Arcata* claims would not place the government on notice such that the time limitation provision would not apply.

### 4. *Requirement of prejudice to complying party*

■ Plaintiffs also argue that their claims should not be dismissed because there was no unreasonable delay in the

presentation of their claims. *Powerine Oil Co. v. United States*, 837 F.2d 1581 (Fed. Cir.1988), suggests that delay would be unreasonable, if 1) the facts supporting the claim were not readily available, and 2) prejudice had occurred due to the delay. *Id.* at 1584. Plaintiffs assert that, because the facts supporting the claim are still readily available, and because the Forest Service already had the opportunity to litigate the issues in *Arcata* and therefore has not been prejudiced by the delay, there was no unreasonable delay and plaintiffs' claims are proper here.

Defendant argues that the issue of prejudice is irrelevant here,[7] because the court need only reach the issue where the parties did not provide in the contract for a time limitation. Defendant contends that plaintiffs' reading of *Powerine Oil* is skewed, because plaintiff failed to point out that the contracts in that case did not include a time limitation provision. In *Powerine Oil*, it was the absence of the time limitation which led the court to hold that the claims need to be filed within a reasonable time. The court stated, "[i]n cases such as this in which the subject contracts do not require the assertion of claims before final payment, claims must be brought within a reasonable time." 837 F.2d at 1583–84. Because the parties here provided in the contract to limit the time for the submission of claims, it is not necessary to determine whether the claims were submitted within a reasonable time. Neither is it necessary to determine whether the government was prejudiced by the plaintiffs' delay in filing the claims.

### 5. *Covenant versus condition*

■ Plaintiffs also argue that the time limitation provision is a covenant or promise to file within the limitations period, not a condition. While plaintiffs acknowledge that they failed to comply with the provision, they contend that their breach of the promise to file within 60 days merely subjects them to liability and damages. In *Favell v. United States*, 16 Cl.Ct. 700 (1989), which is cited both by plaintiffs and defendant, the court examines contract provisions to determine whether they are conditions or covenants. The court stated:

> A contractual condition is to be distinguished from a promise, obligation, or covenant in that a condition creates no right or duty in and of itself, but merely acts as a limiting or modifying contract provision. 'A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.' If a condition does not occur, whether through breach or other cause, the party fails to meet the condition, and acquires no right to enforce the promise. A contractual promise or obligation, on the other hand, raises a duty to perform a service and its breach subjects the promisor to liability and damages, but does not necessarily excuse performance by the other contracting party.

16 Cl.Ct. at 721 (citations omitted). Neither party here provided a close analysis, either in their briefs or during oral argument, of the distinction between covenants and conditions.

The court, however, finds that the language of the contract is clearly a condition. Provision C9.21 does not create a specific right or duty under the contract, but seeks to limit the time within which claims may be filed. The time limitation is clearly " 'an event, not certain to occur, which must occur ... before performance under a contract becomes due.' " *Id.* (citations omitted). Because the event (filing within the time limitation period) did not occur, plain-

---

**7.** Contrary to plaintiffs' assertions, the government maintains that they were prejudiced by the plaintiffs' delay. Generally, the government contends that it could have pursued alternative courses of action if the claims had been timely filed, and that its ability to gather information has been impaired by the delay in the filing of the claims. Because of the court's holding, it is not necessary to reach this issue.

In addition, defendant contends that lack of prejudice to the government would be insufficient to allow plaintiffs to be released from the time limitation provision. In *Reichhold*, 11 Cl. Ct. at 153, the court stated that the "[m]ere lack of prejudice to the Government, however, does not entitle plaintiff to a waiver" of the limitations period.

tiff "fail[ed] to meet the condition," and therefore "acquire[d] no right to enforce the promise." *Id.* Plaintiffs, by failing to file within the time provided in the contract, have lost their right to receive refunds.

The time limitation is not a covenant, as plaintiffs argue, because it does not create a right or duty in and of itself. As discussed above, the provision merely limits the contractor's right to recover the refunds. The court finds that, because the time limitation provision is a condition, and not a covenant, compliance with the time limitation was required before plaintiffs could enforce their refund rights under the contract.

### 6. *Material Breach*

■ Plaintiffs also contend that their failure to submit their claims within the 60 day limitation period was not a material breach of the contract, and therefore their claims should not be barred. Plaintiffs argue that they were unable to submit their claims until after the decision in *Arcata* was issued, because until that decision was issued, there was no monetary dispute between the parties. This argument also must fail. There is no requirement in the Contract Disputes Act or in logic that would require plaintiffs to wait for a related judicial determination prior to the submission of their claims. In addition, defendant contends that this argument is "disingenuous," Defendant's Reply at 8, because only Louisiana–Pacific submitted its claim after the *Arcata* decision was published. Stone Forest and Taylor Westbrook submitted their claims well before the *Arcata* decision was published, and well after the 60–day time period had .expired.

### II. *The Tucker Act and the Act of March 4, 1907*

#### A. Applicability of the 1907 Act

■ In the alternative, plaintiffs contend that their claims are cognizable under the Tucker Act as claims against the United States founded upon an Act of Congress. Plaintiffs allege that they are seeking refunds under the Act of March 4, 1907, 16

U.S.C. § 499, which provides, in pertinent part, that:

> All money received by ... the Forest Service for timber, ... shall be covered into the Treasury of the United States as a miscellaneous receipt, and except as provided in sections 500 and 501 of this title, there is appropriated and made available, as the Secretary of Agriculture may direct, out of any funds in the Treasury not otherwise appropriated, so much as may be necessary to make refunds to depositors of money heretofore or hereafter deposited by them to secure the purchase price on the sale of any products ... in excess of the amounts *found actually due from them to the United States . . . .*

Plaintiffs claim that they are entitled to refunds of money deposited by them to secure the purchase price of timber in excess of amounts actually due from them to the United States, and that, under the Act of March 4, 1907, the court has jurisdiction over those claims. Plaintiffs rely on the Court of Claims case *Utah Power & Light Co. v. United States,* 67 Ct.Cl. 602, 605–06 (1929), to support their contention that the 1907 Act supports a cause of action against the United States for refunds.

Defendant argues that the 1907 Act cannot support jurisdiction in this court because it is not money mandating. In order for a claim to be cognizable under the Tucker Act, the underlying statute must mandate the payment of money. As the Supreme Court has stated:

> Not every claim invoking the Constitution, a federal statute, or regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States, and the claimant must demonstrate that the source of substantive law he relies upon '[c]an fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'

*United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983) (citations and footnote omitted). Defendant contends that the 1907 Act does not *mandate* the payment of money, but

instead, is discretionary. The statute states:

> there is hereby appropriated and made available, as the Secretary of Agriculture *may* direct, out of funds in the Treasury not otherwise appropriated, so much as *may* be necessary to make refunds....

16 U.S.C. § 499 (emphasis added). Defendant asserts that *Utah Power* is not persuasive, because the court there did not even consider whether the 1907 Act mandated the payment of money. In determining whether the Court of Claims had jurisdiction under the 1907 Act, the court in *Utah Power* examined what they considered to be an analogous Department of Interior Statute. However, while the Department of Interior statute analyzed in *Utah Power* might support jurisdiction in this court because it mandates the payment of money ("such excess [payments] *shall* be repaid"), *see* 67 Ct.Cl. at 605, the 1907 Act does not ("so much as *may* be necessary to make refunds").

The court finds that the 1907 Act is not a money-mandating statute, but instead is discretionary, and therefore cannot support jurisdiction in this court. As the Court of Claims recognized in *Eastport Steamship Corporation v. United States*, 372 F.2d 1002, 1008, 178 Ct.Cl. 599 (1967):

> the historical boundaries of our competence have excluded those instances in which the basis of the federal claim—be it the constitution, a statute, or a regulation—cannot be held to command, in itself and as correctly interpreted, the payment of money to the claimant, but in which some other principle of damages has to be involved for recovery.

The 1907 Act does not "command ... the payment of money to the claimant." Instead, the 1907 Act leaves to the discretion of the Secretary of Agriculture[8] whether to refund the money. Such a discretionary statute cannot confer jurisdiction on this court.[9]

### B. Rights and Obligations Arising Under the Contract

■ Even if this court were to find that the 1907 Act did confer jurisdiction, plaintiffs' argument still fails. Plaintiffs argue that Provision C9.21 does not affect plaintiffs' claim for refunds under the 1907 Act, because the provision only affects obligations "arising under said contract." Plaintiffs contend that the 1907 Act creates a cause of action for refund that is separate from the rights arising under the contract. Plaintiffs attempt to distinguish the substantive right under the contract to pay flat rates for the timber from the statutory obligation under the 1907 Act for the Forest Service to refund money. Plaintiffs argue that "Special Provision C9.21 calls

8. Defendant maintains that the Secretary of Agriculture no longer has any authority under the 1907 Act. Defendant contends that, while the 1907 Act did create a system where money received from the national forests would be placed in the Treasury as miscellaneous receipts and could be appropriated to provide for refunds for depositors, refunds cannot be made absent an appropriation by Congress. In the 1907 Act, Congress created permanent indefinite appropriation authority in the Secretary of Agriculture. However, defendant asserts that, in the Act of June 26, 1934, 48 Stat. 1224 (the 1934 Act), the Secretary of Agriculture was stripped of the authority to make refunds under the 1907 Act. Instead, refunds were to be obtained through the Secretary of Treasury under 31 U.S.C. § 1322. It is not necessary to resolve this issue, since the 1907 Act does not confer jurisdiction on this court.

9. Plaintiffs further argue that, although the 1907 Act does contain the phrase "as the Secretary of Agriculture may direct," the Secretary does not possess sole and unfettered discretion over the

funds. Instead, argue plaintiffs, the Secretary's actions are to be reviewed under an arbitrary or capricious standard. Plaintiffs' Supplemental Brief at 5–6, citing *Dismuke v. United States*, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561 (1936). Plaintiffs argue that, if the court finds that the Secretary acted in an arbitrary or capricious manner, then plaintiffs are entitled to their refunds as a matter of law.

The court does not find this argument persuasive. If the statute being relied upon to confer jurisdiction on the court is not money-mandating, but is discretionary as is the case here, the court does not have jurisdiction over the case. *United States v. Testan*, 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976) (statute at issue was not money-mandating; court did not reach the issue of whether action of agency was arbitrary or capricious.) Therefore, the court must have jurisdiction *before* reaching the issue of whether the action was arbitrary or capricious.

for the relinquishment only of 'obligations ... arising under this contract,' not of all rights arising under, nor of all claims relating to, the contract." Plaintiffs' Supplemental Brief at 6. Plaintiffs further argue that their right to pay flat rates arises under the contract, but that there is no remedy-granting provision in the contract that would require the Forest Service to pay refunds. Therefore, argue plaintiffs, the obligation to pay refunds does not "arise under" the contracts. Plaintiffs conclude that the Forest Service's obligation to pay refunds under the 1907 Act is not affected by non-compliance with the time limit provision.

While semantically clever in its advocacy, the court finds this argument "singularly free from any suspicion of logic." *Belcher v. United States*, 94 Ct.Cl. 137, 140 (1941). Any right that plaintiff would have to receive a refund must come from the contract. Plaintiffs, if they are entitled to a refund, must rely on the contract language addressing the escalation of rates and the inadequate pricing index. *Without reference to the contract, plaintiffs would have no monetary claim at all!* Therefore, plaintiffs must have complied with the conditions of the contract, including the condition that they file their claims within 60 days of closure of the sale. As discussed above under Section I, because plaintiffs failed to comply with this time provision, most of plaintiffs' claims are time-barred.

### III. *Specific Contracts*

As discussed briefly above, plaintiffs take exception to the facts as presented by defendant in relation to three contracts. Those factual differences are discussed below.

#### A. Mingo Sale

In the defendant's appendix attached to its motion, the closure letter pertaining to the Mingo sale has attached to it a return receipt dated June 6, 1988. Plaintiffs argue that, because the claim was filed on May 18, 1988, this claim was timely. The government, in response, indicated that an incorrect return receipt had been inadvertently attached to the Mingo sale letter. Defendant asserts that the correct date of closure for the Mingo sale was December 19, 1983.[10] During oral argument, plaintiffs' counsel admitted that plaintiff Mr. Westbrook had received the closure letter, and accepted that the sale had been closed in 1983. Tr. at 42–43. Therefore, for the reasons set forth in Section I of this opinion, the court finds that the Mingo claim is time-barred.

#### B. Van Horn Sale

Neither the plaintiffs nor the defendant have been able to locate the closure letter pertaining to this sale in their files. The government suggested in their opening brief that, with respect to this sale, the government will rely upon the presumption that letters placed in the mails are received in due course.[11] Defendant's Brief at 6 n. 4, citing *Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1932); Fed.R.Evid. 301. In response, plaintiffs contend that the government has failed to provide evidence that any closure letter was sent. Plaintiffs correctly point out that, in order to raise the rebuttable presumption of receipt of a letter, a party must show that the correspondence was properly prepared and mailed.

The court finds itself weighing insufficient facts as to whether the closure letter was ever sent or received. A genuine issue of material fact exists, and, therefore, this claim must be held over for trial.

#### C. Spike Sale

This sale was closed pursuant to a timber sale closure agreement under the Federal Timber Contract Payment Modification Act. Under that agreement, Stone Forest and the Forest Service were "released from

---

10. This information was provided via the affidavit of Eric Brunner, a Timber Management officer. *See* Appendix to Defendant's Reply at 28–33.

11. Defendant submitted an accounting document with their opening brief that allegedly indicated that the letter closing the Van Horn sale had been posted. Appendix to Defendant's Brief at 75.

all rights and obligations under this contract." Appendix to Defendant's Brief at 55. Plaintiffs argue that the release is void because the regulation which mandated the release is invalid, citing *Sierra Pacific Industries v. Lyng*, 866 F.2d 1099 (9th Cir.1989).

The court finds that it is not necessary to reach this issue, because the Spike claim is time-barred. The closure letter was issued on August 20, 1986, and the claim was not submitted until February 25, 1988. For the reasons set forth in Section I above, this claim is time-barred.

## CONCLUSION

For the reasons set forth above, the court grants the government's motion as it pertains to time-barred claims. This opinion does not address those claims which are not time-barred. The parties shall file a joint status report within 60 days from the date of this opinion discussing further proceedings in this case.

IT IS SO ORDERED.

---

1. The government contends that the following claims are time-barred:

